**SOUTHWIND AVIATION, INC. and Aviation Enterprises, Inc., Appellants,**

v.

**Victor AVENDANO, Appellee.**

**No. 13-88-292-CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1989.

Rehearing Denied Oct. 5, 1989.

John Williamson, Brownsville, for appellants.

Ricardo Morado, Wiech & Black, Brownsville, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

KENNEDY, Justice.

This is an appeal from a jury verdict returned in favor of appellee, Victor Avendano, arising out of the repair of an airplane by appellants, Southwind Aviation, Inc. and Aviation Enterprises, Inc. For the purpose of this appeal, Southwind Aviation, Inc. and Aviation Enterprises, Inc. will be considered one and the same and referred to as "appellants." The appellants were found jointly and severally liable. The trial court's judgment awarded appellee $18,872 in damages. We affirm the judgment.

Appellee delivered his damaged Cessna 210 aircraft to appellants for an estimate of the cost of repairs necessary to render it airworthy. Appellants tendered a written estimate of repairs dated July 17, 1984. The estimate recited that it was valid for 20 days. The relevant terms of the estimate follow:

(1) appellants will supply all parts and supplies necessary for repairs; (2) the airplane will be delivered in an airworthy condition; (3) the cost of repairs will be $25,000 plus 15% for hidden damage to the airframe and an additional unknown sum in the event of internal engine damage not apparent at the time of inspection;[1] (4) estimated time for completion of repairs is six months; (5) appellants will require fifty percent of repair cost in advance.

On July 19, 1984, appellee accepted these terms and tendered $12,500 to appellants. The record shows that Mr. Steenbock, vice-president of appellants, subsequently requested that appellee purchase, at appellants' direction, some of the parts and pay for some of the outside repairs directly "so that we [appellants] would not get more

---

1. Neither the record nor the briefs mention any unapparent internal engine damage.

capital involved into a job that we were doing on a part-time basis, [a]nd we would not have to charge them [appellee] any markup on the parts." During trial, appellee testified that the appellants told him that his expenditures in this regard would be credited to his account. Appellee also testified that he had spent $19,622 in parts and outside repairs at appellants' request.

After the six months had expired, appellee made repeated and regular inquiries about the progress of repairs. Between February 1985 and August 1986, appellee requested "around ten times" that his airplane be returned to him. Each time, appellants apologized and requested additional time to complete the repairs ("two more weeks, three more weeks, one more month", "several more weeks, several more days"). Eventually appellee refused to acquiesce to appellants' requests for extension, and he demanded possession of his aircraft. Appellants responded by refusing to surrender possession of the aircraft until appellee tendered to appellants an additional $13,057. On August 6, 1986, appellee filed this suit alleging, in part, breach of contract, conversion and violation of the Texas Deceptive Trade Practices Act.

By their first three points of error, appellants complain that appellee failed to offer evidence of the "reasonableness" of the purchase price paid by appellee for parts and outside repairs which, under the oral agreement, was to be credited to his account. Appellants cite several cases in which Texas courts have held that a party seeking recovery for the cost of repairs to damaged property or expenses incurred for the treatment of personal injuries must put forth evidence of the reasonableness of such expenses. *Ashley v. Bizzell*, 694 S.W.2d 349, 352–353 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *GATX Tank Erection v. Tesoro Petroleum Corp.*, 693 S.W.2d 617, 619 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). However, appellants have misconstrued the term "repairs" in the description of appellee's expenditures and presumed that the expenses incurred by appellee are the same as those in the cited cases, i.e., where expenses were incurred *as a consequence of the defendant's wrong.*

Appellee was not introducing evidence of the cost or expense to repair damage to his property as the consequence of appellants wrongful act but was introducing evidence of his direct damages arising from his compliance with the terms of the oral agreement in which he was to make these expenditures. The facts before us are distinguishable from the cases cited to us by appellants.

■ Because judgment was entered for appellee on his claim under the Texas Deceptive Trade Practices Act, Tex.Bus. & Comm.Code Ann. sec. 17.41—17.63 (Vernon 1987) ("DTPA"), appellants cite *Jacobs v. Danny Darby Real Estate*, 750 S.W.2d 174 (Tex.1988), a case where the consumer successfully established that his expenses were reasonable and necessary. In *Jacobs*, the Supreme Court found sufficient evidence that the plaintiff/consumer's expenses were reasonable and necessary; however, the Court expressly refused to decide whether, under the DTPA, proof of reasonableness and necessity are required at all. Like the other cases cited to us by appellants, the *Jacobs* case is distinguishable from our facts in that Mr. Jacobs was seeking reimbursement for his expenses made in reliance upon the defendant's misrepresentation. These expenses were incurred as a *consequence* of the defendant's misrepresentation. Mr. Jacobs was not expending sums of money at the defendant's express request pursuant to an oral agreement. Therein lies the distinction; under our facts, appellee's expenses were *direct damages* incurred *in performance* of the contract. In the case of direct damages, the law necessarily imposes the measure whether or not the defaulting party possessed any knowledge whatever of the implied and natural consequences of the breach or the amount the party would suffer on account of such breach. *American Bank of Waco v. Thompson*, 660 S.W.2d 831, 834 (Tex.App.—Waco 1983, writ ref'd n.r.e.). Appellee's direct damages are recoverable without evidence of reasonableness. Moreover, because appellee was spe-

cifically instructed by appellants to make these expenditures, we find appellants' complaint of appellee's failure to present evidence regarding the reasonableness of these expenditures without merit. *See generally Donaldson v. Lake Vista Community Improvement Association*, 718 S.W.2d 815, 817–818 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) (delineating the requisites of promissory estoppel). Appellant's first three points of error are overruled.

By their fourth point of error, appellants complain that the trial court erred in awarding appellee $5,000 in damages for the conversion action as well as possession of his aircraft. Appellants contend that this award amounts to a double recovery for appellee.

After the jury found that appellants had indeed converted appellee's aircraft and that the conversion was the producing cause of actual damages to appellee, the jury found that $5,000 would reasonably compensate appellee for his actual damages resulting from the conversion. Evidence was presented at trial that appellee was damaged as a result of the *loss of use* of his aircraft during the period of conversion.

■ A party requesting the return of converted property may recover money damages for the loss of use of the property during the period of its detention. *Adam v. Harris*, 564 S.W.2d 152, 155 (Tex.Civ. App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.). Further, a damage award is proper for the loss of use of an airplane from the time of conversion to the time of trial. *See Clifton v. Jones*, 634 S.W.2d 883, 887 (Tex. App.—El Paso 1982, no writ).

■ Appellants cite *Sibley v. Fitch*, 226 S.W.2d 885 (Tex.App.—Waco 1950, writ ref'd.), in support of their contention that appellee should not be allowed possession and money damages for conversion. In *Sibley*, the plaintiff was suing for the return of oil well casing or, in the alternative,

for its value. The Court held that where a money judgment is recovered, the plaintiff is estopped from asserting any further right, title or interest in the property converted. *Sibley* is clearly distinguishable in that the money damages were awarded for the value of the converted property. In the case before us, appellee was awarded damages for his *loss of use* of the aircraft *during the conversion period;* the damage award was not for the value of the converted aircraft. Appellee is entitled to possession of his aircraft and damages for the loss of use of his aircraft. *Adam*, 564 S.W.2d at 155.

■ Furthermore, appellants' point of error is not properly before this Court because they failed to preserve error with respect to the proper measure of damages on the conversion claim by not complaining at trial of the absence of an instruction in this regard. *Donnelly Marketing v. Lionel Sosa, Inc.*, 716 S.W.2d 598, 602 (Tex. App.—Corpus Christi 1986, no writ). Point four is overruled.

■ Through points five and six, appellants claim that the jury finding of $4,500 as a reasonable cost to complete the repairs on the aircraft and make it airworthy was supported by no evidence or was against the overwhelming weight and preponderance of the evidence. On direct examination, the appellee's expert witness testified that it would cost $6,700 to make the aircraft airworthy.[2] On cross examination, the same expert testified that it would cost $3,300 to make the aircraft airworthy.

When evaluating a "no evidence" point, we are to consider only the evidence and inferences that tend to support the findings of the jury and disregard all evidence and inferences to the contrary; if there is any evidence of probative force to support the jury's finding, it must be upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Hixson v. Pride of Texas Distributing Co.*, 683 S.W.2d 173, 179 (Tex. App.—Fort Worth 1985, no writ); *First National Bank of McAllen v. Brown*, 644 S.W.2d 808, 811 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). There is evidence

2. "I estimated the strip and paint [sic] [$2,800], $600 to reinstall the interior, $1,800 to reinstall the radios, and approximately $1,500 to do the annual [inspection] and put the airplane back in airworthy condition."

to support the jury's finding. Point five is overruled.

In reviewing a point of error asserting that a finding is "against the overwhelming weight and preponderance of the evidence," we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. *In re King's Estate,* 244 S.W.2d at 661; *Montgomery Ward v. Hernandez,* 661 S.W.2d 159, 160 (Tex.App.—Corpus Christi 1983, no writ). If a jury finding is so contrary to the weight and preponderance of the evidence as to be clearly wrong and unjust, the point should be sustained. *Ford Motor Co. v. Nowak,* 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). It is not for this Court to judge the credibility of the witnesses, to assign the proper weight to be given to their testimony, or to resolve conflicts or inconsistencies in testimony. *Hixson,* 683 S.W.2d at 179; *First National Bank of McAllen,* 644 S.W.2d at 811.

When reviewing all of the evidence adduced at trial, we find that the jury's determination that it would cost $4,500 to render the aircraft airworthy was not against the overwhelming weight and preponderance of the evidence. Point six is overruled.

The judgment of the trial court is AFFIRMED.